UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHERYL RAZE,                                                    REPORT
                                                                and
                                    Plaintiff,          RECOMMENDATION

                        v.                                  19-CV-1094V(F)

EVEREST RECEIVABLE SERVICES, INC., and
  DOES 1-10, inclusive,

                                    Defendants.
_____

APPEARANCES:            LEMBERG LAW, LLC
                        Attorneys for Plaintiff
                        SERGEI LEMBERG, of Counsel
                        43 Danbury Road
                        Wilton, Connecticut  06897

                        LIPPES MATHIAS LLP
                        Attorneys for Defendant Everest Receivables Svcs., Inc.
                        BRENDAN H. LITTLE and
                        TESSA RAE SCOTT, of Counsel
                        50 Fountain Plaza
                        Suite 1700
                        Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Lawrence J. Vilardo on

September 5, 2019, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

motions for summary judgment filed by October 19, 2020 by Defendant (Dkt. 25) and by

Plaintiff (Dkt. 26).

## BACKGROUND

Plaintiff Cheryl Raze ("Plaintiff"), commenced this action on August 19, 2019, seeking to recover damages from Defendant Everest Receivable Services, Inc. ("Defendant"),[1] a debt collector, for alleged violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA" or "the Act"), based on two telephone calls placed by Defendant in connection with the collection of an unspecified financial obligation ("the debt") allegedly incurred by Plaintiff to an original creditor ("the Creditor"), and assigned, sold or otherwise transferred to Everest for collection.  On September 4, 2019, Defendant filed its answer (Dkt. 3).  Discovery ensued and was completed on July 21, 2020.  (Dkt. 19).

Motions for summary judgment were filed by Defendant and Plaintiff on October 19, 2020.  Defendant's motion (Dkt. 25) ("Defendant's Motion"), is supported by the attached Memorandum of Law in Support of Defendant Everest Receivable Services, Inc.'s Motion for Summary Judgment (Dkt. 25-1) ("Defendant's Memorandum"), the Declaration of Brendan H. Little, Esq. (Dkt. 25-2) ("Little Declaration"), with exhibit A (Dkt. 25-3) ("Little Declaration A"), the Declaration of David J. Maczka (Dkt. 25-4) ("Maczka Declaration"), with exhibits A through C (Dkts. 25-5 though 25-7) ("Maczka Exh(s). __"), and Defendant Everest Receivable Services, Inc.'s Rule 56 Statement of Proposed Facts (Dkt. 25-8) ("Defendant's Statement of Facts").  Plaintiff's motion (Dkt. 26) ("Plaintiff's Motion"), is supported by the attached Plaintiff's Memorandum of Law in Support of Her Motion for Summary Judgment (Dkt. 26-1) ("Plaintiff's Memorandum"),

---

[1] The Docket does not indicate Defendants "Does 1-10" ("the Doe Defendants" were ever further identified or served with process.  Not only has the time for service of process elapsed, but Plaintiff has not sought to extend the time for service such that the Doe Defendants cannot be joined as Defendants.

Plaintiff's Statement of Undisputed Facts (Dkt. 26-2) ("Plaintiff's Statement of Facts"),

the Declaration of Sergei Lemberg, Esq. in Support of Plaintiff's Motion for Summary

Judgment (Dkt. 26-3) ("Lemberg Declaration"), attaching exhibits A through E (Dkts. 26-

4 through 26-8) ("Plaintiff's Exh(s). __"), and the Declaration of Cheryl Raze (Dkt. 26-9)

("Plaintiff's Declaration").

On November 19, 2020, Defendant filed Defendant Everest Receivable Services,

Inc.'s Response to Plaintiff's Motion for Summary Judgment (Dkt. 30) ("Defendant's

Response"), attaching Defendant Everest Receivable Services, Inc.'s Response to

Plaintiff's Statement of Facts (Dkt. 30-1) ("Defendant's Responding Statement of

Facts").  Also on November 19, 2020, Plaintiff filed Plaintiff's Memorandum of Law in

Opposition to Defendant's Motion for Summary Judgment (Dkt. 31) ("Plaintiff's

Response"), attaching Plaintiff's Response to Defendant's Statement of Facts (Dkt. 31-

1) ("Plaintiff's Responding Statement of Facts").  On December 14, 2020, replies in

further support of summary judgment were filed by both parties including Plaintiff's

Reply Memorandum of Law in Support of Her Motion for Summary Judgment (Dkt. 32)

("Plaintiff's Reply"), and Defendant Everest Receivable Services, Inc.'s Memorandum of

Law in Further Support of Its Motion for Summary Judgment (Dkt. 33) ("Defendant's

Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion should be GRANTED in part and

DENIED in part; Defendant's Motion should be GRANTED in part and DENIED in part;

the matter should be re-referred to the undersigned for a hearing on Plaintiff's damages

and attorney fees.

**<u>FACTS</u>**[2]

Plaintiff Cheryl Raze ("Plaintiff" or "Raze") incurred a financial obligation ("the debt") to a creditor ("the Creditor") in connection with services provided by the Creditor primarily for family, personal, or household purposes.[3]  The debt was subsequently sold, assigned, or otherwise transferred for collection to Defendant Everest Receivable Services, Inc. ("Defendant" or "Everest").  On March 27, 2019, Defendant placed a telephone call ("the first call") to telephone number (XXX) XXX-5992 ("the phone number"), which was registered to one Norma Jean Canova ("Canova" or "Plaintiff's mother").  The first call was answered by Plaintiff's mother and the following conversation ensued:

Defendant: Hello.

Canova: Hello.

Defendant: Hi.  This is Chavon Porter.  All calls are recorded.  I was looking to confirm location information for Cheryl Raze.  Would you be able to assist me with that today?

Canova: I really can't.  What do you need her for?

Defendant: Uh well we have a required document going out to the address that we have on file.

Canova: Well eventually it was forwarded.  I can't give out any information about her.

Defendant: Okay, no problem.  Would you mind having her give us a call?  And are you a relative?

Canova: Yes.

Defendant: I'm assuming you are.  Okay.

Canova: Yeah.

---

[2] Taken from the pleadings and motion papers filed in this action.
[3] The record provides few details of the debt, such as when it was incurred and the amount of the debt.

Defendant: Alrighty.

Canova: Alright give me your – hold on let me get a pen.

Defendant: No problem.

Canova: And who is it calling?

Defendant: Uh she'll be calling Everest Receivables Services back.

Canova: Okay.

Defendant: And may I ask who I'm speaking with?  I do know that you're a relative; are you a mother?  A sister?

Canova: I'm Norma Canova; I'm her mother.

Defendant: Oh okay.  Well hi ma'am.

Canova: And what's the phone number?

Defendant: 888-397-2894.

Canova: Okay.

Defendant: Alrighty.

Canova: Okay next time next – I don't hear from her very often but next time I hear from her I'll certainly give her this information.

Defendant: I do certainly appreciate that ma'am.  Well you enjoy the rest of your evening, okay?

Canova: Thank you.  Okay, bye bye.

Defendant: You're welcome.  Okay bye bye.

    [call ends]

Plaintiff's Statement of Facts ¶ 4; Defendant's Responding Statement of Facts ¶ 4.

After the first call ended, Defendant noted in its account notes "spoke with mother stated shed [*sic*] have consumer call."  Plaintiff's Statement of Facts ¶ 5.

On April 1, 2019, Defendant placed a second telephone call ("the second call") to the phone number and again spoke with Plaintiff's mother.  A transcription of the second call follows:

Canova: Hello.

Defendant: Yeah hi I was calling to try to confirm location information for a Cheryl Raze.

Canova: I'm sorry; I can't help you.  What do you need it for?

Defendant: Yeah, we're trying to confirm a mailing address.  The reason for that – there was a document that was being delivered out; we're trying to confirm a 242 Silverwood Trail in Columbia, South Carolina.

Canova: And who are you with?  I mean, who are you?

Defendant: Sure, ma'am.  The company I was calling from was Everest Receivable Services.  And like I said the reason, they're probably going to have a letter delivered out to her.  Uh let me ask you.  I obviously we don't mean to bother you; is there a better number to reach Cheryl directly?

Canova: No, I don't hear from her very often.  I can tell her that you called and give her your name and number.

Defendant: Yeah I'd appreciate that, ma'am.  If you want to pass our number along, like I said I can answer any questions that she may have.

Canova: Okay.  Go ahead.

Defendant: Sure.  888-397-2894.

Canova: And your name?

Defendant: Bill?

Canova: Bill?

Defendant: Yeah.

Canova: Should she ask for you?

Defendant: Yeah.  Just ask for me.  First name is Bill.  My last name is Hare, okay?

Canova: What's the last name?

Defendant: H-A-R-E.

Canova: Oh.  Hare?

Defendant: Yeah like rabbit.

Canova: Okay.  I probably won't hear from her for another week.

Defendant: Yeah no worries.  And obviously you know you can't control that.  But you know if you're in touch with her if she could give me a call back at her earlier convenience okay?

Canova: Is it a very important document?

Defendant: I'll be honest; the details of the document I couldn't even open up without her.  So like I said we do location services here. You know, location information would usually be place of employment, home address, home phone number, etc.

Canova: Okay.

Defendant: Yeah well if she could give me a call back at her earliest convenience.

Canova: Thank you. Bye bye.

Defendant: Thank you ma'am.

[call ends]

Plaintiff's Statement of Facts ¶ 6; Defendant's Responding Statement of Facts ¶ 6.

Following the second call, Defendant noted in its account notes "lmtcb w/ mom,"

Plaintiff's Statement of Facts ¶ 7, which Plaintiff interprets, and Defendant does not

dispute, Defendant's Responding Statement of Facts ¶ 7, means "left message to call

back with mom."  Plaintiff's Memorandum at 5.

When Defendant placed the first and second calls to Canova's phone number,

Plaintiff was not living with her mother.  After both phone calls, Canova called Plaintiff

and informed Plaintiff of the phone calls, provided Plaintiff with Defendant's telephone number, and asked Plaintiff to return the calls.

## DISCUSSION

**1.    Summary Judgment**

Both Plaintiff and Defendant move for summary judgment on Plaintiff's claims. Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party, *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), and summary judgment may not be granted based on a credibility assessment.  *See Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51, 55 (2d Cir. 2017) ("Adverse parties commonly advance conflicting versions of the events throughout a course of litigation. In such instances on summary judgment, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." (citations, quotation marks, and brackets omitted)).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a

8

material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 162 (2d Cir. 2016) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133,137 (2d Cir. 2009)).

2.      **FDCPA**

The FDCPA imposes civil liability on "debt collector[s]" who engage in specifically prohibited debt collection practices.  15 U.S.C. § 1692e ("§ 1692__"). The elements of an FDCPA claim include that (1) the plaintiff is a 'consumer' as defined by the FDCPA; (2) the 'debt' must arise out of transactions that are primarily for personal, family or household purposes; (3) the defendant is a 'debt collector' as defined by the FDCPA; and (4) the defendant must have violated one of the specific statutory prohibitions regarding debt collection communication or activity.  *Flores v. RMA Recovery Group, LLP*, 2021 WL 1572508, at * 3 (W.D.N.Y. Apr. 22, 2021) (internal citation and quotation omitted).  In the instant case, the parties do not dispute that the first three elements are met, but only whether Defendant violated any specific statutory prohibitions.

In particular, Plaintiff asserts with regard to the first and second calls that Defendant violated several FDCPA provisions including, 15 U.S.C. §§ 1692b(1), Complaint ¶ 24, 1692b(3), *id*. ¶ 25, 1692c(b), *id*. ¶ 26, 1692d, *id*. ¶ 27, 1692e, *id*. ¶ 28, 1692e(1), *id*. ¶ 29, and 1692f, *id*. ¶ 30.  In support of summary judgment, Defendant argues each of the FDCPA provisions upon which Plaintiff seeks relief fails on the merits, Defendant's Memorandum at 5-16, whereas Plaintiff maintains she is entitled to recover for violations of 15 U.S.C. §§ 1692b(3) and 1692c(b).  Plaintiff's Memorandum at 7-12.  In opposing Defendant's Motion, Plaintiff argues not only that Defendant's first and second calls violated § 15 U.S.C. §§ 1692b(3) and 1692c(b), Plaintiff's Response at 6-17, but the calls also violated § 15 U.S.C. §§ 1692d, 1692e, and 1692f.  *Id*. at 17-18.  Because Plaintiff provides no argument in support of a violation of 15 U.S.C. §§

10

1692b(1)[4] or 1692e(1),[5] the court deems Plaintiff to have abandoned these claims and does not further address them.

### A.    15 U.S.C. § 1692b(3)

Section 1692b(3) provides that

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information.

15 U.S.C. § 1692b(3).

With regard to the alleged violation of § 1692b(3), Defendant argues Cadova's statement during the first call that she would provide Plaintiff with Defendant's message implied that Cadova had current location information for Plaintiff.  Defendant's Memorandum at 8; Defendant's Response at 8.  Plaintiff maintains that the conversation exchanged during the first call did not indicate Cadova had any further location information for Plaintiff.  Plaintiff's Memorandum at 11-12; Plaintiff's Response at 12-13.

A thorough reading of the transcript of the first call establishes that at the beginning of the call, in response to Defendant's inquiry whether Cadova could assist with "confirm[ing][6] location information for Cheryl Raze," Plaintiff's Statement of Facts ¶ 4 at 2, Cadova responded "I really can't."  *Id*.  Canova further stated, "I can't give out

---

[4] As Defendant argues in support of summary judgment, Defendant's Memorandum at 5-6, 15 U.S.C. § 1692b(1) merely requires any debt collector who communicates with a third person in attempting to acquire information concerning the consumer must "identify himself, state that he is confirming or correcting location information concerning the consumer and, only if expressly requested, identify his employer. . . ."

[5] The court notes 15 U.S.C. § 1692e(1) prohibits a debt collector using false, deceptive, or misleading representations in connection with collecting a debt, including "[t]he false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof."

[6] Unless otherwise indicated, bracketed material has been added.

any information about her." *Id*.  At the end of the conversation, Canova, in assuring

Defendant she would provide Plaintiff with Defendant's message and telephone

number, also stated, "Okay next time next – I don't hear from her very often but next

time I hear from her I'll certainly give her this information." *Id*. at 3.   No reasonable juror

could conclude that anything within Cadova's statements supports Defendant's asserted

reasonable belief that Cadova's response regarding Plaintiff's location information was

incorrect or incomplete so as to justify Defendant's second call five days later; rather,

Cadova clearly stated she could not contact Plaintiff, but waited to hear from Plaintiff

and agreed to provide Plaintiff with Defendant's message requesting Plaintiff call

Defendant at the number Defendant provided the "next time I hear from her. . . ." *Id*.

        Although Plaintiff made statements at her deposition that Cadova called Plaintiff

after the first call, *see*, *e.g.*, Plaintiff's Dep. Tr. at 32 (stating Cadova called Plaintiff

"shortly after" receiving the first call), strongly suggesting Cadova was able to contact

her daughter by telephone, that Plaintiff's mother had Plaintiff's telephone number

provides no basis for Defendant to construe Cadova's statements during the first call as

reasonably implying Cadova had such location information[7] for Plaintiff.  Nor does

Defendant reference any caselaw supporting its conclusory assertion, Defendant's

Response at 8, that "Everest reasonably believed that after receipt of its message [the

first call], Plaintiff would give her mother permission to disclose her complete location

information to Everest."  Defendant thus had no reasonable belief, based on the first

call, that as of April 1, 2019, Cadova then had correct or complete location information

for Plaintiff to support Defendant's second call within the exception provided by

---

[7] For purposes of the FDCPA, "location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

§ 1692b(3).

Accordingly, with regard to the alleged violation of § 1692b(3), summary judgment should be DENIED as to Defendant and GRANTED as to Plaintiff.

**B.    15 U.S.C. § 1692c(b)**

As relevant here, § 1692c(b) prohibits a debt collector from communicating with third parties without the consumer's prior consent directly given to the debt collector, except as provided in 15 U.S.C. § 1692b.  15 U.S.C. § 1692c(b).  Section 1692b thus provides so-called "carve-out" exceptions to the general prohibition against debt collectors communicating with third parties without the consumer's prior consent. *Halberstam v. Global Credit and Collection Corp.*, 2016 WL 154090, at *2 (E.D.N.Y. 2016).  The § 1692b exceptions, however, only apply to communications by debt collectors "for the purpose of acquiring location information about the consumer. . . ." 15 U.S.C. § 1692b.

In support of summary judgment, Defendant maintains Defendant did not violate § 1692c(b) by communicating with Canova because during the first and second calls, Defendant did not disclose the existence of Plaintiff's debt and refused to provide Canova with any information about the document Defendant intended to send Plaintiff. Defendant's Memorandum at 10-11; Defendant's Response at 3-6.  In contrast, Plaintiff argues Defendant violated § 1692c(b) by asking Canova to give Plaintiff a message on behalf of Everest, an inquiry not intended to acquire location information and, as such, is not within § 1692b's carve-out exceptions, *i.e.*, permitting subsequent calls by the debt collector to obtain the consumer's correct or complete location information. Plaintiff's Memorandum at 7-11; Plaintiff's Response at 6-12.

Although, as Defendant asserts, Defendant did not, during either the first or second call, disclose any information to Canova regarding Plaintiff's debt, asking a third party to provide a message to a consumer is not within the location identifying carve-out exception for which a debt collector is permitted to communicate with a third party without the debtor's prior consent as provided by § 1692c(b).  Leaving a message with a third party to have a consumer contact the debt collector has been considered an attempt "to obtain a debtor-initiated contact, something the debtor may or may not have done on his own, or in response to a dunning letter with full disclosure."  *Halberstam*, 2016 WL 154090, at *3 (holding debt collector's call violated § 1692c(b) where third party who answered the telephone call advised the consumer was "not yet in" and asked if he could take a message with the debt collector responding by providing his name, a callback phone number and advising the call was "regarding a personal matter").  Even an offer to relay a message from a debt collector to a consumer has been held to violate § 1692c(b).  *See Rivera v. Financial Asset Management Systems, Inc.*, 2020 WL 5791175, at * 6 (E.D.N.Y. Sept. 25, 2020) (holding debt collector's failure to object to third party's statement that he would "get in contact" with the consumer and "tell her" demonstrated the debt collector's true intent "to obtain a debtor initiated contact . . . .").  Simply put, attempting to obtain a debtor-initiated contact is not the same as confirming or inquiring as to a consumer's location to the extent permitted by § 1692b.  *Rivera*, 2020 WL 5791175, at *6; *Halberstam*, 2016 WL 154090 at *3.  Defendant, by leaving messages requesting a callback from Plaintiff in both the first and second calls, thus violated § 1692c(b).

Summary judgment with regard to the alleged violations of § 1692b(c) should be DENIED as to Defendant and GRANTED as to Plaintiff.

### C.    15 U.S.C. § 1692d

As relevant here, § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  Section 1692d lists six separately enumerated types of conduct that is considered to violate § 1692d including (1) the use or threat of use of violence or criminal means to harm to the physical person, reputation, or property of any person, (2) the use of obscene or profane language the natural consequence of which is to abuse the hearer, (3)  the publication of a list of consumers who refuse to pay a debt, (4) the advertisement for sale of any debt to coerce payment of the debt, (5) causing a telephone to ring or repeatedly or continuously engaging any person in a telephone conversation with the intent to annoy, abuse, or harass any person at the called telephone number, and (6) placing calls without meaningfully disclosing the caller's identity.  15 U.S.C. § 1692d(1)-(6). Defendant maintains, and Plaintiff does not dispute, a plain reading of the record reveals there are no facts supporting a finding Defendant violated any of the first five types of conduct that § 1692d prohibits.  Defendant's Memorandum at 12.  Defendant further maintains that a plain reading of the transcripts of the first and second calls establishes Defendant sufficiently identified itself in response to Cadova's inquiry.  *Id*. (citing Defendant's Statement of Facts ¶¶ 2-22).  The transcripts of the first and second calls confirm this.  *See* Plaintiff's Statement of Facts ¶ 4 at 2; ¶ 6 at 4.  As Defendant further argues, Defendant's Memorandum at 12, the fact that Cadova was not aware of

the purpose of its calls beyond attempting to contact Plaintiff is corroborated by Plaintiff's deposition testimony that when Plaintiff's mother advised Plaintiff of the second call from Defendant "looking for your address," and asking what Plaintiff wanted her mother to tell them, Plaintiff inquired "who are they," to which Plaintiff's mother responded, "I don't know."  Plaintiff's Dep. Tr.[8] at 19.

Nevertheless, Plaintiff points to her statements at her deposition that Defendant's calls to Plaintiff's mother indicating Defendant was trying to locate Plaintiff were "scary" and caused Plaintiff to become "stressed," "paranoid," and "anxious."  Plaintiff's Response at 17 (citing Plaintiff's Dep. Tr. at 20, 40, and 26).  At her deposition, however, Plaintiff tethered her asserted stress, paranoia, and anxiety not to the content of Defendant's calls but, rather, to Plaintiff's personal circumstances including that she had recently emerged from bankruptcy and been divorced, moved across the country to a new state with her daughter and grandson, and endured the passing of her father. Plaintiff's Dep. Tr. at 19-20.  There is, however, nothing in the record suggesting Defendant was aware of these circumstances or that Defendant's conversation with Plaintiff's mother, the tone of which can only be described as banal, would have "the natural consequence" of harassing, oppressing, or abusing Plaintiff.

Accordingly, with regard to the alleged violation of § 1692d, Defendant's Motion should be GRANTED, and Plaintiff's Motion should be DENIED.

---

[8] Filed as Little Declaration A (Dkt. 25-3).

### D.    15 U.S.C. 1692e

"Section 1692e of the FDCPA makes it unlawful for a debt collector to 'use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'"  *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 166 (2d Cir. 2020) (quoting 15 U.S.C. § 1692e).   It also provides a "non-exhaustive" list of "particular practices that debt collectors are forbidden to employ."  *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002).  In support of summary judgment, Defendant argues "Plaintiff fails to identify any specific conduct that purportedly violates these sections, leaving defendant and this Court to simply guess."  Defendant's Memorandum at 13.  In opposition to Defendant's Motion, Plaintiff maintains that Defendant violated § 1692e because the first and second calls were placed to Plaintiff's mother "under the guise of confirming Plaintiff's location information when in reality Defendant was attempting to communicate with Plaintiff via her mother," and thus "were misleading and deceptive in violation of section 1692e." Plaintiff's Response at 18.  In further support of its motion, Defendant argues Plaintiff's argument is unsupported by any evidence in the record.  Defendant's Reply at 9.

Plaintiff does not rely on any of the 16 separately enumerated particular practices debt collectors in which are prohibited, under § 1692e, from engaging as false or misleading representations.  Although the listed particular practices are "non-exhaustive," *Kropelnicki*, 290 F.3d at 127, Plaintiff also cites no caselaw in support of her argument that Defendant's calls were an attempt to indirectly communicate with Plaintiff through her mother and the court's research reveals no case on point.  Nor does a plain reading of the transcripts of the first and second calls support Plaintiff's

assertion that the calls are false or misleading representations of the purpose of Defendant's call as an attempt to communicate with Plaintiff through her mother.

Accordingly, summary judgment on this alleged violation should be GRANTED in favor of Defendant and DENIED as to Plaintiff.

### E.    15 U.S.C. 1692f

As Defendant argues, Defendant's Memorandum at 15-16, and Plaintiff agrees, Plaintiff's Response at 18, Congress, in recognition that "it could not anticipate every improper practice used by debt collectors," enacted § 1692f to "catch conduct not otherwise covered by the FDCPA."  *Okyere v. Palisades Collection, LLC*, 961 F.Supp.2d 522, 531 (S.D.N.Y. 2013).  As such, § 1692f provides a cause of action only where a defendant's conduct is "unfair or unconscionable," but is not already covered by another FDCPA provision.  *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d 643, 667 (S.D.N.Y. 2006) (dismissing plaintiff's § 1692f claim for which the complaint did not identify any other conduct beyond that which the plaintiff asserted violated other provisions of the FDCPA).

Similarly, in the instant case, as discussed above, Plaintiff does not identify any other conduct that violated the FDCPA beyond that which Plaintiff maintains violates other FDCPA provisions.  This determination is underscored by Plaintiff's statement in response to Defendant's Motion that "while Plaintiff has established violations of several other sections of the FDCPA, to the extent the Court finds otherwise it should hold that Defendant's calls [ ] were unfair and unconscionable in violation of section 1692f." Plaintiff's Response at 18.  This statement essentially invites the court to scour the record in search of some other violation of the FDCPA, which the court is not permitted

to do.  *See Cicvara v. Duracell*, 515 Fed.Appx. 27, 29 (2d Cir. 2013) (affirming the district court's decision on summary judgment and declining the appellant's "'invitation to scour the record, research any legal theory that comes to mind, and serve generally as an advocate for appellant.'" (quoting *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999))).  In any event, a fair reading of the record reveals no evidence of any other violations by Defendant.  Accordingly, summary judgment should be GRANTED in favor of Defendant and DENIED as to Plaintiff as to the asserted violation of § 1692f.

In sum, the record establishes three FDCPA violations by Defendant, including one violation of 15 U.S.C. § 1692(b)(3) based on the second call for which the first call did not justify a reasonable belief that Defendant could obtain during the second call correct or complete location information for Plaintiff, and two violations of 15 U.S.C. § 1692c(b) because in both the first and second calls, Defendant went beyond seeking location information for Plaintiff by leaving messages requesting Plaintiff call back Defendant, for which Plaintiff may be entitled to actual damages and maximum statutory damages in the amount of $ 1,000 for each violation, 15 U.S.C. §§ 1692k(a)(1), 2(A), as well as attorney fees.  15 U.S.C. § 1692k(a)(3).  The matter should be re-referred for a hearing on damages and attorney fees.  *See Read v. Amana Collection Services*, 1991 WL 165033, at * 1 (W.D.N.Y. Aug. 12, 1991) (awarding the plaintiff statutory damages and attorney fees after explaining the court held a hearing on damages after the plaintiff was granted summary judgment on FDCPA's claims).

## **CONCLUSION**

Based on the foregoing, Defendant's Motion (Dkt. 25) should be GRANTED in part and DENIED in part; Plaintiff's Motion (Dkt. 26) should be GRANTED in part and DENIED in part.  The matter should be re-referred for a hearing to assess damages and attorney fees.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:         March 3rd, 2022
                      Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     March 3rd, 2022
              Buffalo, New York