UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHERYL RAZE,

        Plaintiff,

   v.                                      19-CV-1094-LJV-LGF
                                             DECISION & ORDER
EVEREST RECEIVABLE SERVICES,
INC.,

        Defendant.

---

       On August 19, 2019, the plaintiff, Cheryl Raze, commenced this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Docket Item 1. On September 5, 2019, this Court referred the case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B). Docket Item 5. On October 19, 2020, the defendant, Everest Receivable Services, Inc. ("Everest"), moved for summary judgment, Docket Item 25, and Raze cross-moved for summary judgment, Docket Item 26. On November 19, 2020, both parties responded, Docket Items 30 and 31, and on December 14, 2020, both parties replied, Docket Items 32 and 33. On February 14, 2022, Everest filed a notice of supplemental authority regarding *McKinley v. Everest Receivable Servs., Inc.*, No. 19-CV-1289S, 2022 WL 446407, at *1 (W.D.N.Y. Feb. 14, 2022) (Skretny, *J.*).

       On March 3, 2022, Judge Foschio issued a Report and Recommendation ("R&R") finding that both motions should be granted in part and denied in part. Docket Item 35. More specifically, Judge Foschio recommended granting Raze's motion and denying Everest's motion with respect to three FDCPA violations—one violation of 15

U.S.C. § 1692b(3) and two violations of 15 U.S.C. § 1692c(b)—but granting Everest's motion and denying Raze's motion with respect to the remaining alleged violations of 15 U.S.C. §§ 1692d, 1692e, and 1692f.

On March 17, 2022, Everest objected to the R&R on the basis that (1) "the [R&R did] not address [the p]laintiff's [section] 1692b(1) cause of action" but "should have recommended dismissal," Docket Item 36 at 3; (2) "[t]he [R&R] ignored record evidence and decisional authority[ ] when it determined that [the d]efendant's second call . . . violated [section 1692b(3) of] the FDCPA," *id*. at 4; and (3) "[t]he [R&R] incorrectly concluded that [the d]efendant violated [section] 1692c(b) by attempting to leave a message for [the p]laintiff's mother, Norma Canova," *id.* at 10.  On April 8, 2022, Raze responded to the objection, Docket Item 38, and on April 21, 2022, Everest replied, Docket Item 39.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, response, and reply; and the materials submitted to Judge Foschio. Based on that *de novo* review, and for the reasons that follow, the Court accepts and adopts Judge Foschio's recommendation except that the Court DENIES both motions for summary judgment with respect to the alleged violation of section 1692b(3), and the Court GRANTS Everest's motion and DENIES Raze's motion with respect to the alleged violations of section 1692c(b).

## **FACTUAL BACKGROUND**

This case concerns two telephone calls from Everest to Norma Canova, Raze's mother.

On March 27, 2019, Everest called a telephone number registered to Canova and had the following conversation with her:

> Everest:  Hello.
>
> Canova:  Hello.
>
> Everest:  Hi.  This is Chavon Porter.  All calls are recorded.  I was looking to confirm location information for Cheryl Raze.  Would you be able to assist me with that today?
>
> Canova:  I really can't.  What do you need her for?
>
> Everest:  Uh well we have a required document going out to the address that we have on file.
>
> Canova:  Well eventually it was forwarded.  I can't give out any information about her.
>
> Everest:  Okay, no problem.  Would you mind having her give us a call?  And are you a relative?
>
> Canova:  Yes.
>
> Everest:  I'm assuming you are.  Okay.
>
> Canova:  Yeah.
>
> Everest:  Alrighty.
>
> Canova:  Alright give me your – hold on let me get a pen.
>
> Everest:  No problem.
>
> Canova:  And who is it calling?
>
> Everest:  Uh she'll be calling Everest Receivables [sic] Services back.

> Canova:  Okay.
>
> Everest:  And may I ask who I'm speaking with?  I do know that you're a relative; are you a mother?  A sister?
>
> Canova:  I'm Norma Canova; I'm her mother.
>
> Everest:  Oh okay.  Well hi ma'am.
>
> Canova:  And what's the phone number?
>
> Everest:  888-397-2894.
>
> Canova:  Okay.
>
> Everest:  Alrighty.
>
> Canova:  Okay next time next – I don't hear from her very often but next time I hear from her I'll certainly give her this information.
>
> Everest:  I do certainly appreciate that ma'am.  Well you enjoy the rest of your evening, okay?
>
> Canova:  Thank you. Okay, bye bye.
>
> Everest:  You're welcome. Okay bye bye.

Docket Item 35 at 4-5 (quoting Raze's Statement of Facts ¶ 4; Everest's Responding Statement of Facts ¶ 4).[1]

Five days later, Everest called back and had the following conversation with Canova:

> Canova: Hello.
>
> Everest: Yeah hi I was calling to try to confirm location information for a Cheryl Raze.

---

[1] Everest noted that "some non-substantive language was omitted or was transcribed out of order" in Raze's transcriptions of the calls but did not object to the substance of the transcripts or provide alternate transcriptions.  Docket Item 30-1 at 2-6.  Moreover, neither party objected to the transcriptions quoted here, which Judge Foschio included in the R&R.

4

Canova: I'm sorry; I can't help you. What do you need it for?

Everest: Yeah, we're trying to confirm a mailing address. The reason for that – there was a document that was being delivered out; we're trying to confirm a 242 Silverwood Trail in Columbia, South Carolina.

Canova: And who are you with? I mean, who are you?

Everest: Sure, ma'am. The company I was calling from was Everest Receivable Services. And like I said the reason, they're probably going to have a letter delivered out to her. Uh let me ask you. I obviously we don't mean to bother you; is there a better number to reach Cheryl directly?

Canova: No, I don't hear from her very often. I can tell her that you called and give her your name and number.

Everest: Yeah I'd appreciate that, ma'am. If you want to pass our number along, like I said I can answer any questions that she may have.

Canova: Okay. Go ahead.

Everest: Sure. 888-397-2894.

Canova: And your name?

Everest: Bill?

Canova: Bill?

Everest: Yeah.

Canova: Should she ask for you?

Everest: Yeah. Just ask for me. First name is Bill. My last name is Hare, okay?

Canova: What's the last name?

Everest: H-A-R-E.

Canova: Oh. Hare?

Everest: Yeah like rabbit.

5

>Canova: Okay. I probably won't hear from her for another week.
>
>Everest:  Yeah no worries.  And obviously you know you can't control that.  But you know if you're in touch with her if she could give me a call back at her earlier convenience okay?
>
>Canova:  Is it a very important document?
>
>Everest:  I'll be honest; the details of the document I couldn't even open up without her.  So like I said we do location services here.  You know, location information would usually be place of employment, home address, home phone number, etc.
>
>Canova:  Okay.
>
>Everest:  Yeah well if she could give me a call back at her earliest convenience.
>
>Canova:  Thank you. Bye bye.
>
>Everest:  Thank you ma'am.

*Id.* at 6-7 (quoting Raze's Statement of Facts ¶ 6; Everest's Responding Statement of Facts ¶ 6).[2]

## **DISCUSSION**

The Court assumes the reader's familiarity with the procedural history of this case, the relevant legal standards, and Judge Foschio's analysis in the R&R.  *See* Docket Item 35.

---

[2]  *See supra* note 1.

**I.     EVEREST'S OBJECTIONS**

   **A.     Section 1692b(1)**

Everest's first objection is that "the [R&R did] not address [the p]laintiff's [section] 1692b(1) cause of action."  Docket Item 36 at 3.  But as Raze observes in her response, Judge Foschio "'deem[ed] [the p]laintiff to have abandoned' her claim under 1692b(1) which is why [he] declined to 'further address' the claim."  Docket Item 38 at 12 n.2 (quoting Docket Item 35 at 10-11).  Thus, Judge Foschio indeed addressed the claim, and Everest's first objection lacks merit.

   **B.     Section 1692b(3)**

Everest next contends that "[t]he R&R incorrectly concluded that [the d]efendant violated [section] 1692b(3)."  Docket Item 36 at 4.  This Court agrees and finds that questions of fact preclude summary judgment on this issue.

Section 1692b addresses a debt collector's "[a]cquisition of location information" and provides a set of rules for "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer."  15 U.S.C. § 1692b.  Relevant here, section 1692b(3) provides that a debt collector shall "not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information."  *Id.* § 1692b(3).  "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium."  *Id.* § 1692a(2).

1.      **Whether the Conversations Were "Communications"**

Before turning to Everest's arguments regarding section 1692b, this Court must address a threshold question. In its objection regarding section 1692c(b), Everest argues that to be a "communication" under the FDCPA, a message or conversation must "convey . . . information about the debt." Docket Item 36 at 12. Thus, Everest contends, the messages it left with Canova with a name and call-back number were not "communications" because they "did not disclose any information about the debt." *Id.* at 13.

But if that argument were correct, then both of Everest's conversations with Cordova would not be "communications." After all, Everest did not mention any debt, or even imply the existence of a debt, in either call.[3] Thus, to determine whether either conversation falls under the FDCPA's purview, this Court must first address whether a conversation or message that concerns a debt but does not divulge or even imply the existence of that debt to a third party is a "communication" under the FDCPA.

The Second Circuit has not yet had the opportunity to consider the scope of a "communication" under the FDCPA. But four other circuits have found that "[t]o convey information regarding a debt, a communication must at a minimum imply the existence of a debt." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 742 (6th Cir. 2015); *see also Fontana v. HOVG LLC*, 989 F.3d 338, 342 (5th Cir. 2021) (holding that "to indirectly convey information regarding a debt, a conversation or message would need to, at the

---

[3] The name "Everest Receivable Services" would not alone indicate the existence of a debt. *Cf. Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 744 (6th Cir. 2015) (noting that "Van Ru Credit Corporation" and "General Revenue Corporation" were not "likely to imply the existence of a debt").

very least, imply that a debt existed"); *Lavallee v. Med-1 Sols., LLC*, 932 F.3d 1049, 1054–55 (7th Cir. 2019) ("We therefore hold that a debt collector's message must at least *imply* the existence of a debt to meet the Act's definition of 'communication.'" (emphasis in original)); *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) ("A third-party 'communication,' to be such, must indicate to the recipient that the message relates to the collection of a debt; this is simply built into the statutory definition of 'communication.'").[4]  Thus, those courts found that messages that did not at least imply the existence of a debt were not "communication[s]" under the FDCPA.  See *Fontana*, 989 F.3d at 342 (5th Cir. 2021) (finding that message left with third party for debtor to call back "Bay Area Credit Service" regarding "an important personal business matter" was not a "communication"); *Lavallee*, 932 F.3d at 1051, 1054–55 (finding that email stating that "Med-1 Solutions has sent you a secure message" and featuring an embedded hyperlink inviting the recipient to "View SecurePackage" was not a "communication"); *Brown*, 804 F.3d at 741-42 (finding that voicemail "from Van Ru Credit Corporation" to debtor's employer requesting a call-back from "someone from the payroll department" was not a "communication"); *Marx*, 668 F.3d at 1177 (finding that a fax that did not "indicate to the recipient that [it] relate[d] to the collection of a debt" or "expressly reference debt" was not a "communication").

    The Eleventh Circuit, by contrast, has described the definition of "communication" as "broad" and has held that "[i]n order to be considered a communication, the only

---

[4]  The United States Supreme Court granted certiorari and affirmed *Marx* on a different question—one that involved awarding costs—but denied certiorari as to the scope of the definition of "communication."  *Marx v. Gen. Revenue Corp.*, 566 U.S. 1021 (2012).

requirement of the information that is to be conveyed is that it must be regarding a debt." *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1258 (11th Cir. 2017).  The court explained: "We can assume that by choosing to omit any qualifier other than requiring that the call must be regarding a debt, Congress meant to [include] *any* information, as long as it regards a debt." *Id.* (emphasis in original) (internal citation omitted); *see also Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1351, 1353 & n.3 (11th Cir. 2009) (finding that the following voicemail was a "communication": "This is an important message for Edwards Brenda. [sic]  Please return this message at 1-800-381-0416, between the hours of 8 a.m. and 9 p.m. eastern standard time.  It is important that you reach our office.").[5]

Consistent with *Hart* and *Edwards*, several district courts in this circuit have found that a message left with a third party is a "communication" even if the caller did not suggest in any way that the call involved a debt or was from a debt collector.  *See Rivera v. Fin. Asset Mgmt. Sys., Inc.*, No. 17-CV-1295 (WFK), 2020 WL 5791175, at *1-*2, *6-*7 (E.D.N.Y. Sept. 25, 2020) (finding that calls to family members after debt collector had obtained location information were improper third-party "communications" even though they did not reference or imply the existence of any debt); *Halberstam v. Glob. Credit & Collection Corp.*, No. 15-CV-5696 (BMC), 2016 WL 154090, at *1-*3

---

[5] Several of the other circuits distinguished *Hart* because there, the debt collector identified himself as such.  *See Fontana*, 989 F.3d at 342; *Lavallee*, 932 F.3d at 1055.  But the court in *Hart* relied in part on its previous decision in *Edwards*, which found that voicemails that "revealed only that the messages were intended for Edwards, and left contact information and instructions regarding returning the call[,] . . . were still considered communications." *Hart*, 871 F.3d at 1258 (citing *Edwards*, 584 F.3d at 1351, 1353 & n.3).  Thus, this Court finds that the Eleventh Circuit has created a circuit split on the scope of the FDCPA's definition of "communication."

(E.D.N.Y. Jan. 12, 2016) (finding that debt collector's message to call back "Eric Panganiban . . . [r]egarding a personal business matter" was an improper third-party communication).

After careful consideration, this Court agrees with the Eleventh Circuit on this close question and finds that as long as a call relays information regarding a debt, it is a "communication" regardless of whether it discloses or implies the existence of the debt. So, for example, when a debt collector states only that the call concerns "an important business matter," that call conveys information regarding a debt even though the person receiving the information may not be aware of that fact.

First, as the Eleventh Circuit observed, "[t]he statute broadly defines 'communication' as a conveying of information 'regarding a debt.'" *Hart*, 871 F.3d at 1258. "There is no requirement in the statute that the information must be specific or thorough in order to be considered a communication." *Id.* So as a matter of statutory construction, nothing more is required.

What is more, interpreting "communication" as applying only to calls in which a debt collector implies the existence of the debt "would render portions of section 1692b superfluous." *Thomas v. Consumer Adjustment Co.*, 579 F. Supp. 2d 1290, 1296-97 (E.D. Mo. 2008); *see also West v. Nationwide Credit, Inc.,* 998 F.Supp. 642, 645 (W.D.N.C.1998) ("If Congress had intended for the statute to be interpreted in this manner, it would not have drafted section 1692b."). For example, section 1692b(5) states that "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . not use any language or symbol on any envelope or in the contents of any

communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt." But if the letter and envelope do not in any way indicate that they are in connection with the collection of a debt, then the letter and envelope would—by Everest's definition—not be a communication at all, and so section 1692b(5) would be unnecessary and superfluous.

For all those reasons, this Court finds that both conversations were "communications" under the FDCPA.

### 2. Whether Everest's Second Call Was Permitted

Because the calls were communications, the issue becomes whether they were protected by the "safe harbor" of section 1692b. There is no dispute that the first call was a proper location-acquisition call covered by section 1692b. So the precise question here is whether, when Everest called Canova a second time, its agent "reasonably believe[d] that the earlier response of [Canova was] erroneous or incomplete *and that [Canova now had] correct or complete location information*." 15 U.S.C. § 1692b(3) (emphasis added). Judge Foschio found that based on the transcript of the first call, "[n]o reasonable juror could conclude that anything within Cadova's statements supports [the d]efendant's asserted reasonable belief that Cadova's response regarding [the p]laintiff's location information was incorrect or incomplete so as to justify [the d]efendant's second call five days later." Docket Item 35 at 12. "Rather," Judge Foschio concluded, "Cadova clearly stated she could not contact [the p]laintiff, but waited to hear from [the p]laintiff and agreed to provide [the p]laintiff with

[the d]efendant's message requesting [the p]laintiff call [the d]efendant at the number [the d]efendant provided the 'next time I hear from her.'" *Id.*

In its objection, Everest counters that "there is no question that [it] had a reasonable belief that Norma Canova had further information about her daughter's location." Docket Item 36 at 9. Thus, Everest contends, it should be granted summary judgment on this claim. *Id.* at 5. But even if there is no question of fact about whether Everest had reason to suspect that Canova knew or was able to find out more than she was willing to admit during the first call, Everest offers no reason why—as a matter of law—it had reason to believe that something changed between the first call and the second call. In other words, while Everest may well be correct that any reasonable caller would believe that the mother knew or could easily learn more than she was admitting, it does not even suggest why it must have been true that five days later "such person *now ha[d]* correct or complete location information." 15 U.S.C. § 1692b(3) (emphasis added). So Everest is not entitled to summary judgment on that claim.

In the alternative, Everest argues that "at minimum, a question of fact remains regarding the reasonableness of Everest's second telephone call to Norma Canova" preventing the Court from granting Raze's motion for summary judgment on that claim. Docket Item 36 at 5. This Court agrees.

First, as just noted, a juror might well find that Everest had good reason to believe that Canova knew or could easily learn more than she was willing to share during the first call. She said that she could not provide any contact information for her daughter, not that she did not have that information. Docket Item 26-2 at ¶ 4. So a

13

reasonable caller might well believe that Canova did not have Raze's permission to share the contact information that Canova either had or could easily get.

Moreover, a juror might also find that because Canova said that she would be speaking with her daughter, it was reasonable for Everest to believe that Canova might have more complete information a few days later or that Raze might have authorized Canova to give out Raze's contact information.  But a juror alternatively could find that such a belief was not reasonable based on Canova's indication that she could not give out information about her daughter and that she spoke with her daughter infrequently.  Thus, this is a classic factual dispute that falls squarely within the purview of the jury.

Everest relies on what it contends are the "nearly identical allegations" in *McKinley v. Everest Receivable Servs., Inc.*, 2022 WL 446407, at *17-*18 (W.D.N.Y. 2022) (granting summary judgment for defendant on section 1692b(3)), to argue that there is no factual dispute and that it is entitled to summary judgment.  *See* Docket Item 36 at 6-7.  But in that case, the third party did not indicate that she "really c[ould]n't" give out location information or say that she spoke with her family member infrequently.  *See McKinley*, 2022 WL 446407, at *2.  So while there may not have been a question of fact in *McKinley*, here there is a question of fact about the reasonableness of Everest's thinking that Canova "ha[d] correct or complete location information" at the time of the second call.  *See* 15 U.S.C. § 1692b(3).

Accordingly, this Court respectfully declines to accept the entirety of Judge Foschio's recommendation and DENIES both parties' motions for summary judgment with respect to the section 1692b claim.

## C. Section 1692c(b)

Everest next argues that Judge Foschio incorrectly determined that leaving messages with Canova violated section 1692c(b). This Court agrees with Everest.

Section 1692c(b)—"[c]ommunication with third parties"—prohibits a debt collector from "communicat[ing], in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector," except to obtain location information as provided in 15 U.S.C. § 1692b. As noted above, the FDCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Thus, to qualify as a prohibited communication with a third party, the communication must (1) "convey[ ] . . . information regarding a debt directly or indirectly," (2) must be "in connection with the collection of [a] debt," and (3) must not be covered by the exception outlined in section 1692b.

Judge Foschio found that "[a]lthough, as [Everest] asserts, [it] did not, during either the first or second call, disclose any information to Canova regarding [the p]laintiff's debt, asking a third party to provide a message to a consumer is not within the location identifying carve-out exception for which a debt collector is permitted to communicate with a third party without the debtor's prior consent as provided by [section] 1692c(b)." Docket Item 35 at 14. More specifically, Judge Foschio found that "attempting to obtain a debtor-initiated contact is not the same as confirming or inquiring as to a consumer's location to the extent permitted by [section] 1692b." Docket Item 35 at 14; *see Halberstam*, 2016 WL 154090, at *2 (finding that "leaving a callback number . . . is not part of the exempted information that [section 1692b(1)] allows the debt

15

collector to provide to the third party"); *see also Rivera*, 2020 WL 5791175, at *7 (finding that debt collector "compounded its error" of contacting third parties after having confirmed the debtor's location information by "failing to object" when the third party offered to contact the debtor).

Everest argues that because "[t]he transcripts of the calls . . . and the requested message[s]" did "not convey any information about the debt," Everest's "conduct does not fall within the purview of the [FDCPA]." Docket Item 36 at 12. As explained above, *see* Section I.B.1, *supra*, this Court rejects that argument. But for the reasons that follow, this Court respectfully disagrees with Judge Foschio and finds that the messages here—which were left in the course of location-acquisition calls and did not violate any of the explicit provisions of section 1692—did not violate section 1692b(c) because they were covered by section 1692b's "safe harbor."

As explained above, section 1692b allows communication with third parties "for the purpose of acquiring location information about the consumer" and provides a set of rules for such contact. 15 U.S.C. § 1692b. More specifically, section 1692b provides that a debt collector contacting a third party to acquire location information

> shall—
>
> (1) identify himself, state that he is confirming or
> correcting location information concerning
> the consumer, and, only if expressly requested, identify his
> employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once
> unless requested to do so by such person or unless
> the debt collector reasonably believes that the earlier
> response of such person is erroneous or incomplete and that

> such person now has correct or complete location
> information;
>
> (4) not communicate by post card;
>
> (5) not use any language or symbol on any envelope or in
> the contents of any communication effected by the mails or
> telegram that indicates that the debt collector is in
> the debt collection business or that
> the communication relates to the collection of a debt; and
>
> (6) after the debt collector knows the consumer is
> represented by an attorney with regard to the
> subject debt and has knowledge of, or can readily ascertain,
> such attorney's name and address, not communicate with
> any person other than that attorney, unless the attorney fails
> to respond within a reasonable period of time
> to communication from the debt collector.

*Id.*

Here, there can be little doubt that the purpose of Everest's calls was to obtain location information: Indeed, the callers said exactly that at the very beginning of both calls. Docket Item 35 at 4-7. Both callers were careful not to relay any information about the debt or even to refer to a debt in any way. And as required by section 1692b, the callers gave the name of their employer only when asked. *See* Docket Item 36 at 4-7.[6]

Leaving a message after the third party declines to provide contact information during a proper location-acquisition call does not violate the statute. Notably, five of the six mandates that address location-information calls are instructions about what *not* to do, and leaving a message with a callback number is not prohibited.

---

[6] Raze does not allege that the content of Everest's messages violated any of the explicit prohibitions of section 1692b. As explained above, Raze alleges that the second call in its entirety was impermissible, but she does not claim that the content of the message violated a prohibition in section 1692b.

17

Case 1:19-cv-01094-LJV-LGF   Document 40   Filed 07/22/22   Page 18 of 20

Nor does this Court see any reason why it should read such an implicit prohibition into the statute. The "location information" a debt collector is permitted to acquire includes a person's "telephone number." 15 U.S.C. § 1692a(7). Asking someone to give a message to an individual to call back when the person cannot or will not provide that individual's telephone number is no more invasive of the individual's privacy—and in fact is arguably less invasive—than the explicitly permitted request for the phone number. Indeed, when someone is asked for contact information that he or she has but is reluctant to provide without permission to do so, the sensible solution is to offer to relay the message for a call back.

Thus, this Court finds that a message left with a third party in the course of a call made "for the purpose of acquiring location information about the consumer" does not violate the FDCPA, so long as it does not violate another prohibition in section 1692—such as stating that the consumer owes a debt.

This is not a case like *Halberstam* or *Rivera* where the caller left a message for the debtor after obtaining contact information. Under those circumstances, courts have found that the purpose of the call—obtaining information needed to contact the debtor—had been accomplished and that the calls therefore left 1692b's safe harbor. Here, on the other hand, asking for a call back was a perfectly reasonable and appropriate request after Canova said that she could not give out her daughter's contact information. In fact, it is worth noting that in the second call, the caller did not ask for a call back; instead, Canova herself volunteered to ask her daughter to call back. *See* Docket Item 35 at 6.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to [e]nsure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also Kropelnicki v. Siegel, 290 F.3d 118, 127 (2d Cir. 2002) ("The legislative history of the passage of the FDCPA explains that the need for the FDCPA arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" (quoting S.Rep. No. 95–382, at 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696)).  What happened here was a far cry from any "abusive debt collection practice[ ]," and finding a violation of the FDCPA under these circumstances would stretch the Act far beyond its stated purpose.

In sum, leaving a message with a third party during a location-acquisition call after the third party declines to provide location information does not take the call outside section 1692b's "safe harbor," nor does it violate any explicit or implicit prohibition of the FDCPA.  Therefore, this Court GRANTS Everest's motion and DENIES Raze's motion as to violations of section 1692c(b).

## II.     PORTIONS OF THE R&R TO WHICH THERE WERE NO OBJECTIONS

Neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  Although not required to do

so in light of the above, this Court nevertheless has reviewed the portions of Judge Foschio's R&R to which there were no objections, as well as the parties' submissions to him on those issues. Based on that review and the absence of any objections, the Court accepts and adopts Judge Foschio's recommendation to grant Everest's motion and deny Raze's motion with respect to the alleged violations of sections 1692d, 1692e, and 1692f.

## **CONCLUSION**

For the reasons stated above and in the R&R, Everest's motion for summary judgment, Docket Item 25, is GRANTED IN PART AND DENIED IN PART, and Raze's motion for summary judgment, Docket Item 26, is DENIED. More specifically, both sides' motions are DENIED as to the alleged violation of 15 U.S.C. § 1692b(3), and Everest's motion is GRANTED as to the alleged violations of 15 U.S.C. §§ 1692b(c), 1692d, 1692e, and 1692f. This Court will schedule a status conference to set a trial date.

SO ORDERED.

Dated:   July 22, 2022
         Buffalo, New York

                                          /s/ Lawrence J. Vilardo
                                         LAWRENCE J. VILARDO
                                         UNITED STATES DISTRICT JUDGE